UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg

**TOMMY GOODSON,**

    Plaintiff,

v.                                                                                                                         **Civil Action No. 1:20cv227**
                                                                                                               Judge Bailey

**CHRISTOPHER MEYER; JOHN PYLES, P.A.;
TROUTMAN, Corrections Officer; LEIGH BIRD,
P.A. Hazelton; and COAKLEY, Warden,**

    Defendants.

## REPORT AND RECOMMENDATION

On September 14, 2020, the *pro se* plaintiff, an inmate incarcerated at FCI Gilmer in Glenville, West Virginia, initiated this case by filing a Bivens[1] civil rights complaint against the above-named defendants. [Doc. 1]. The Clerk of Court issued a Notice of Deficient Pleading, advising the plaintiff that he must refile his complaint on a Court-approved Bivens form,[2] and either pay the full filing fee of $400.00 or file an application to proceed *in forma pauperis*, a Consent to Collection of Fees from Trust Account, and a copy of his Prisoner Trust Account Report ("PTAR") with its attached Ledger Sheets. [Doc. 4].

On December 14, 2020, the plaintiff filed his complaint on the approved form and filed the motion to proceed as a pauper with the supporting documents. [Docs. 13, 14,

---

[1] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[2] Plaintiff filed his complaint on a form approved by this district for state civil rights claims pursuant to 42 U.S.C. § 1983, alternately crossing out "1983" or "state civil rights" and writing in "Bivens."

15, 16]. By Order entered December 15, 2020, the plaintiff was granted permission to proceed as a pauper and directed to pay an initial partial filing fee ("IPFF"). [Doc. 17]. The plaintiff paid the requisite IPFF on February 2, 2021. [Doc.22]. On March 24, 2021, the plaintiff filed a motion to appoint counsel [Doc. 26], which was subsequently denied. [Doc. 33].

This case is before the undersigned for review and a report and recommendation pursuant to Local Rule of Prisoner Litigation Procedure ("LR PL P") 2.

## I. The Complaint

In the Court-approved form complaint, the plaintiff raises an Eighth Amendment claim of deliberate indifference to serious medical needs, along with two retaliation claims. Specifically, he alleges that while incarcerated at USP Hazelton, between May 2 and May 10, 2017, after enduring nine days of severe pain from untreated kidney stones without receiving any medical attention from the defendants, he finally attempted suicide in an attempt to get medical attention, and was taken to an outside hospital, where a surgeon removed the kidney stone. [Doc. 13 at 7 – 8]. He contends that when he was discharged from the hospital on May 13, 2017, the defendants retaliated against him by placing him in "solitary confinement" for over two weeks. Id. at 8. He also alleges that the defendants retaliated against him after his suicide attempt on May 10, 2017, by having an "untrained layman" correctional officer ("C.O") attempt to insert an IV line into his neck after he overdosed. [Id.].

The plaintiff maintains that he exhausted his administrative remedies. He has attached copies of his grievances. [Id. at 4 -5; see also Doc. 13-1 at 1 – 6].

2

The plaintiff contends that as a result of the defendants' actions, he suffered pain, loss of sleep, anxiety, and stress, and continues to suffer post-traumatic stress disorder ("PTSD") and an injury to his kidneys and urinary tract. [Id. at 9]. As relief, he seeks $480,000.00 in compensatory damages and $500,000.00 in punitive damages. [Id.].

## II. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), a court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[3] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## III. Analysis

### A. Exhaustion of Administrative Remedies

---

[3] Id. at 327.

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[4] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101-102.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, *et seq*. If the

---

[4] Id.

prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based.  If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R.§ 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. Nonetheless, pursuant to the Court's authority under 28 U.S.C. § 1915, it not foreclosed from dismissing a case *sua sponte* on exhaustion grounds if the failure to exhaust is apparent from the face of the complaint. See Anderson v. XYZ Prison Health Services, 407 F.3d 674, 681-82 (4th Cir. 2005).

Finally, where exhaustion is not apparent from an inmate's pleading, "a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." Custis v. Davis, 2017 U.S. App. LEXIS 5147 (4th Cir. 2017)(quoting Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

The plaintiff's Court-approved form complaint contends that he administratively exhausted his remedies regarding his Bivens claims.  In purported proof of exhaustion, he attached  copies of some grievances and responses, which include at least two

5

rejection notices and no proof that the plaintiff ever corrected the issues and completed the exhaustion process.

More specifically, the plaintiff produced a copy of a March 24, 2020 type-written BP-9 Request for Administrative Remedy, averring that the failure to treat his kidney stones "on, or about, May 2, 2017" caused him to make a suicide attempt to obtain medical treatment, and thereafter, he underwent emergency surgery, but still suffered residual effects; he sought $400,000.00 in damages. [ECF 13-1 at 6]. However, the bottom half of the BP-9 designated for the "Part B- Response" of the warden is blank; there is no written response nor any stamp to indicate it was ever received by the warden; however, hand-written across the area, the plaintiff wrote "no reply." Id.  The fact that the area on the  BP-9 for the warden's response was completely blank raises the question of whether in fact it was ever submitted.

Next, the plaintiff produces a copy of a May 5, 2020, Regional Remedy Appeal, alleging deliberate indifference by prison medical staff, and stating that he had attempted suicide on May 2, 2017, in an attempt to obtain medical treatment for "severe pain from kidney infection and kidney stones." [Doc. 13-1 at 2]. He sought $250,000.00 in damages. The Regional Remedy appeal was stamped as received by the Mid-Atlantic Regional Office on May 9, 2020, and by the Regional Director's Office, North Central Region, on June 18, 2020. Id.  Its case number was marked "1020049-R1." Id.

Plaintiff also attaches a May 16, 2020 Rejection Notice from Mid-Atlantic Regional Office, which noted that Remedy ID 1020049-R1, received on May 9, 2020, regarding "other medical matters" was being rejected and returned, because "you must first file a BP-9 request through the institution for the warden's review and response before filing an

6

appeal at this level." Doc. No. 13-1 at 6]. He was further advised to include a copy of the rejection notice with any future correspondence regarding the rejection. Id. The fact that this rejection notice notes that the BP-9 was not received appears to support the inference that plaintiff's BP-9 had not, in fact, ever previously been submitted.

Next, the plaintiff attaches a copy of a June 19, 2020 Rejection Notice for regional appeal in Remedy ID 1020049-R2,[5] received in the North Central Regional Office[6] on June 18, 2020 regarding "other medical matters," and advising that 1) you must first file a BP-9 request through the institution for the warden's review and response before filing an appeal at this level; 2) you did not provide a copy of your institution administration remedy request (BP-9) form or a copy of the (BP-9) response from the warden; 3) See remarks; 4) you may resubmit your appeal in proper form within 10 days of this rejection notice. Remarks: you must file in the region you are housed. You must file a BP9 request at the institutional level prior to filing an appeal at this level. [Doc. 13-1 at 1].

Finally, the plaintiff attaches a copy of a Central Office Administrative Remedy Appeal, raising the same claims of injury, and now seeking $850,000.00 in damages "else a Bivens action to be filed [sic]." [Doc. 13-1 at 4].  This Central Office Administrative Remedy Appeal is undated and unsigned by Plaintiff and it has no Remedy ID case number marked on it, nor any stamp or any other marking to indicate it was ever received by the Central Office, raising the question of whether in fact it was ever submitted.

---

[5] The "R2" suffix on the Remedy ID number indicates it was a second attempt at that level.

[6] Because Plaintiff was incarcerated at FCI Gilmer at the time, his Regional Office would have been the Mid-Atlantic Regional Office.

Accordingly, even overlooking the fact that the plaintiff's claims had already long since run before he ever even initiated the grievance process, it is clear that the plaintiff did not fully exhaust his administrative remedies prior to filing suit. There is no indication that the plaintiff ever submitted the BP-9 at all, given that both of his rejection notices prompt him to produce the same. Further, rejection notices always provide specific directions as to how to correct the problem at issue; the plaintiff simply did not follow the directions. Instead of correcting the error his first rejection notice advised him of and beginning again, the plaintiff disregarded the instruction and resubmitted another regional appeal, now to the wrong regional office, and still failed to attach a copy of his BP-9. Further, there is no proof in the record that he ever submitted the Central Office Appeal, given that it is blank, unsigned, undated, and has no marking on it to show it was ever received.

Despite his claims to the contrary, it appears that the plaintiff never filed the BP-9, despite being repeatedly instructed to do so, and never successfully appealed to the Mid-Atlantic Regional Office, or to the Central Office (General Counsel), because both of his appeals were rejected and there is no proof that he ever submitted the Central Office Appeal at all.

Had Plaintiff merely followed the instructions in the Rejection Notices' instruction to file a BP-9 with the Warden, he could have successfully completed the grievance process with his untimeliness in initiating it excused. Nonetheless, The plaintiff did not resubmit his request as instructed, and instead, ignored the instruction, and merely resubmitted his Regional Appeal again to the BOP North Central Regional Office, where it was again rejected on June 19, 2020 as Remedy ID 1020049-R2, and the plaintiff was

specifically advised that it was being rejected for multiple reasons and informed that he must file in the region where he is housed.

The undersigned finds that the plaintiff makes no claim that the grievance process was rendered unavailable to him, or that the defendants or any other prison official ever threatened him with violence to discourage him from filing grievances. Therefore, consistent with Custis v. Davis, the plaintiff will be given the opportunity to address the issue in his objections to this Report and Recommendation, and the undersigned finds that his failure to exhaust his Bivens claim of deliberate indifference to serious medical needs by the defendants cannot be excused, and this matter must be dismissed for failure to exhaust administrative remedies.[7] Unexhausted claims must be dismissed. See Woodford, 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court but is mandatory."). Normally, such a dismissal would be without prejudice. However, here, because so much time has elapsed, the plaintiff cannot now do so under the BOP's administrative remedy procedure;[8] therefore, his claims should be dismissed with prejudice. See 28 C.F.R. § 542.10, *et seq*.

Moreover, for the reasons discussed below, even if the plaintiff's claims had been exhausted, they would be due to be dismissed with prejudice.

## B. Statute of Limitations

---

[7] The undersigned also notes that to the extent the plaintiff filed grievances, they do not address in any way his claims of retaliation. Accordingly, those claims would be do to be dismissed regardless.

[8] The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9**), within 20 calendar days of the date of the occurrence on which the complaint is based**. See 28 C.F.R. § 542.10, *et seq.* (emphasis added).

For purposes of determining the appropriate statute of limitations, claims filed pursuant to 42 U.S.C. § 1983 are analogous to "general personal injury actions." Wilson v. Garcia, 471 U.S. 261, 279 (1985). Thus, their timeliness is determined based upon the relevant state limitations period for personal injury actions. Because Bivens is the federal equivalent to an action under § 1983, federal courts have consistently extended the state general personal injury statute of limitations to Bivens cases, as well as § 1983 claims. See, *e.g.,* Chin v. Bowen, 833 F.2d 21, 23-24 (2nd Cir. 1987). In fact, the Fourth Circuit Court of Appeals has determined that West Virginia's two-year personal injury statute of limitations contained at W.Va. Code § 55-2-12(b) is appropriately applied in Bivens actions. See Reinhold v. Evers, 187 F.3d 348, 359, n. 10 (4th Cir. 1999).

W.Va. Code § 55-2-12(b) provides:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) within two years next after the right to bring the same shall have accrued if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party dies, it could not have been brought at common law by or against his personal representative.

In this case, the plaintiff's claims against the defendants appear to be well outside the two-year applicable statute of limitations. The complaint clearly states that the plaintiff is seeking damages for events that occurred between May 2 – 17, 2017. It is clear that the plaintiff was aware of his claim at least by May 17, 2017. Moreover, it is apparent that he filed his first BP-10 Regional Appeal on May 5, 2020, by then, on or about three years after the injury occurred.[9] See ECF No. 13-1 at 2.

---

[9] The plaintiff's grievances say that he attempted suicide on May 2, 2017 over the failure to receive medical care; however, his Court-approved form complaint indicates that

The undersigned is cognizant that while a Bivens plaintiff pursues his administrative remedies, as he is obligated to do by the PLRA, the otherwise applicable statute of limitations is tolled. Young v. Thompson, No. 2:10cv66, 2011 WL 3297494 (N.D. W.Va. July 29, 2011) (citing Johnson v. Lappin, 2011 WL: 560459 (S.D.W. Va. Jan. 6, 2011)); see Lopez v. S.C.D.C., No. 3:06251-PMD-JRM, 2007 WL 2021875 *2 (D.S.C. 2007) ("The Fourth Circuit has not addressed the issue of whether the statute of limitations for a § 1983 action should be equitably tolled while a prisoner is exhausting the administrative process. However, the 'uniform holdings of the circuits that have considered the question' typically tolls the statute of limitations.") *citing* Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005)).

Here, there is no indication in the record that the plaintiff ever filed a BP-8 over his instant claims. 28 C.F.R. § 542.10, *et seq*. requires that a prisoner who achieves no satisfaction informally must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. Therefore, the plaintiff was required to have filed a BP-9 by July 9, 2016. If he were dissatisfied with the warden's response, he was required to appeal to the BOP's Regional Director (BP-10) within 20 days of it, or by July 29, 2016. Finally, if he received no satisfaction from the Regional Director, he was required to appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response; therefore, at most, likely by August 29, 2016. Accordingly, assuming the plaintiff continued exhausting his grievances at each level, he should have completed the exhaustion process at or around

---

between May 2 – 10, 2017 he experienced nine days of pain and suffering and then attempted suicide on May 10, 2017. See ECF No. 13 at 8.

August 29, 2016, and he would then have had until August 29, 2018 to timely file a complaint regarding the May 2 – 10, 2017 incident. However, he did not sign his original complaint in this matter until September 9, 2020 [ECF No. 1 at 10], more than two years after the time for completing exhaustion would have passed. Accordingly, the plaintiff's claims against the defendants[10] are time-barred.

The undersigned recognizes that the statute of limitations is an affirmative defense, which means that the defendant generally bears the burden of affirmatively pleading its existence. See Fed.R.Civ.P 8(c); Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005)("the raising of the statute of limitations ...constitutes an affirmative defense.") Moreover, where a defendant has failed to raise a statute of limitations defense by way of its answer, the defense is usually waived. See Peterson v. Air Line Pilots Ass'n Int'l, 759 F.2d 1161, 1664 (4th Cir. 1985). Because the statute of limitations is a waivable defense, its restrictions are not jurisdictional in nature, and in an ordinary civil case, "the district court should [refrain] from raising and considering the statute of limitations defense *sua sponte*." Eriline Company S.A. v. James P. Johnson, 440 F.3d 648, 657 (4th Cir. 2006).

However, the Fourth Circuit has also recognized that the statute of limitations may be addressed *sua sponte* when such a defense appears on the face of either a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254, see Hill v. Braxton, 277 F.3d 701, 706 (4th Cir. 2002), or a complaint filed *in forma pauperis* pursuant to 28 U.S.C. § 1915,

---

[10] Because the undersigned has determined that the plaintiff's complaint is time-barred, a specific analysis of the plaintiff's claim against each defendant has not been undertaken.

see also Nasim v. Warden, Md. House of Corrections, 64 F.3d 951, 953-54 (4th Cir. 1995). In Nasim, the Court concluded that in evaluating a complaint filed *in forma pauperis* pursuant to § 1915, a district court may consider a statute of limitations defense *sua sponte* when the face of the complaint plainly reveals the existence of such defense. See 64 F.3d at 943 - 54. In reaching this conclusion, the Court observed that, in eliminating the requirement for paying costs, § 1915 removed "any economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits," and therefore presented the potential to overburden the judicial system with patently meritless lawsuits. Id.

Moreover, § 1915 requires a district court to screen initial filings and directs a district court to dismiss a complaint filed *in forma pauperis* "at any time if the court determined that . . . the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted." § 1915(3)(2)(B)(I)-(ii). Accordingly, the Court explained that this screening authority distinguishes *in forma pauperis* suits and establishes a justification for an exception to the general rule that a statute of limitations defense should not be raised and considered *sua sponte*. Id. at 953 - 54. See also Castillo v. Grogan, 52 Fed. Appx. 750, 751 (6th Cir. 2002)(district court may *sua sponte* dismiss complaint as time-barred when the defect is obvious); Alston v. Tennessee Dept. of Corrections, 2002 WL 123688 * 1 (6th Cir. Jan. 28, 2002)("Because the statute of limitations was obvious from the face of the complaint, *sua sponte* dismissal of the complaint was appropriate.); Fraley v. Ohio Gallia County, 1988 WL 789385 * 1 (6th Cir., Oct. 30, 1998)(affirming *sua sponte* dismissal of *pro se* § 1983 action filed after two year statute of limitations for bringing such an action had expired); Hunterson v. Disbabato, 2007 WL 1771315 * 1 (3rd Cir. June 20, 2007) (a district court may *sua sponte*

dismiss a claim as time-barred where it is apparent from the complaint that the applicable limitations period has run); Pino v. Ryan, 49 F.3d 51, 53-54 (2nd Cir. 1995)(concluding that district court can raise statute of limitations defense *sua sponte* in evaluating complaint filed pursuant to § 1915); Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir. 2006); Dellis v. Corr. Corp. of Am., 257 F.3d 508, 511 (6th Cir. 2001).

Therefore, it is apparent on the face of the complaint that the statute of limitations for bringing these Bivens claims expired long before the plaintiff filed this action. Accordingly, the complaint should be dismissed on initial screening.

### IV. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that the plaintiff's Court-approved form complaint [ECF No. 13] be **DENIED and DISMISSSED with prejudice** for its failure to exhaust administrative remedies and as time-barred.

The plaintiff is notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to United States District Judge John Preston Bailey.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page

limitations, consistent with LR PL P 12. Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). .

The Clerk of Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket. In addition, because this Report and Recommendation completes the referral from the district court, the Clerk is directed to terminate the Magistrate Judge's association with this case and removed the pro se law clerk flag.

DATED: November 8, 2021

*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE